UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARLOS A. SARABASA,

Petitioner,

v.

DIRECTOR OF U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, *et al.*,

Respondents.

Case No. C26-969-RSM

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241

This matter comes before the Court on Petitioner Carlos A. Sarabasa's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Dkt. #14. The Court has reviewed the Amended Petition, the Return filed by the Government, Dkt. #16, and the remainder of the record. The following facts are taken from the verified Amended Petition and a declaration of a deportation officer. *See* Dkts. #14 and #17.

Petitioner was born in Cuba in 1987. Dkt. #14 at 6. He arrived in Florida pursuant to a family reunification visa in 2012. Dkt. #17 at 1; Dkt. #14 at 2. He became a lawful permanent resident in 2014. *Id*. at 2.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28
U.S.C. § 2241 - 1

On February 15, 2017, he was convicted of Conspiracy to Commit Mail Fraud in federal court and sentenced to 41 months in prison. *Id*. After serving his time in prison, immigration officials took Petitioner into custody. *Id*. On June 17, 2020, he was ordered removed from the United States to Cuba by an immigration judge. *Id*. However, on September 15, 2020, he was instead released on an Order of Supervision ("OSUP"). *Id*. He continued to live in Florida.

At some point along the way, Petitioner married a U.S. citizen and together they are raising eight U.S. citizen children. Dkt. #14 at 2.

In August of 2025, at a routine ICE check-in, Petitioner was told to wear an ankle monitor and to find a new country to which he could relocate. *Id*. In other words, he was enrolled in the Alternatives to Detention ("ATD") program and Respondents were aware that Cuba likely would not accept Petitioner for removal. *See* Dkt. #17 at 2. He began making plans to move his family to Canada, where he and his wife would seek asylum with their eight children. Dkt. #14 at 2. He hired a Canadian immigration lawyer. *Id*.

On January 13, 2026, Petitioner informed ICE at a regular check-in that he was planning to relocate to Canada based on a program he believed was available for persons under final orders of removal from the United States. Dkt. #17 at 2. Respondents informed Petitioner he would need to report to the ATD program before traveling out of Florida. *Id*.

Petitioner did everything Respondents asked of him. On February 13, 2026, he reported to the ATD program and then departed for Seattle, where he checked in again before departing to Canada. *Id*. An ICE officer removed Petitioner's ankle monitor before his flight and gave him a letter stating that Petitioner was required to leave the United States by February 16, 2026. Dkt. #14 at 2–3. Petitioner and his wife sold their home in Florida. *Id*. at 3.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 2

Things did not work out as planned.  On February 16, 2026, U.S. Customs and Border Protection ("CBP") officers encountered Petitioner being escorted by Canada Border Services agents back across the border after his entry was refused into Canada pursuant to the Safe Third Country Agreement.  Dkt. #17 at 3.  The next day, for reasons that are not adequately explained, CBP sent Petitioner to the Northwest ICE Processing Center ("NWIPC") in Tacoma, and he has been sitting in detention for over two months.  *See id*.  He has never received a clear explanation for why he was detained.  Dkt. #14 at 3.

In February, Respondents tried to get Petitioner to consent to third country removal to Mexico, which he rejected.  Dkt. #17 at 3.  In March, Respondents instructed Petitioner to "make efforts to assist in obtaining a travel document and contact other countries [sic] governments requesting admission, including Costa Rica, Brazil, and Colombia."  *Id*.  Petitioner refused to sign any forms and tried to exit the meeting—the best he could do was "abruptly walk[] away into a holding cell and slam[] the door behind him" because he was still in detention.  *Id*.

There is no evidence in the record that Petitioner has ties to any of these third countries.

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  In this case, Petitioner contends that his continued detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 3

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). Determining whether an administrative procedure provides the process constitutionally due:

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's arrest and detention comport with constitutional due process requirements. In so doing, the Court is mirroring the application of this test used by other judges in this District. *See, e.g., E.A. T.-B. v. Wamsley, et al.*, 795 F. Supp. 3d 1316 (W.D. Wash. Aug. 19, 2025).

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004). That Petitioner was arrested, detained for months, and remains in custody undoubtedly deprives him of an established interest in his liberty.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 4

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. The Court agrees with Petitioner that the risk of erroneous deprivation of his liberty interest is high under the facts of this case unless the Government provides adequate notice of the reasons for his continued detention and a meaningful opportunity to respond.

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing to determine flight risk or danger to the community. The Government clearly has an interest in detaining removable noncitizens under certain circumstances to the extent needed to ensure that they do not abscond or commit crimes. But where Petitioner informs the Government of his every movement, then is detained for over two months without any clear change in circumstances, and where he cannot be deported, the Government fails this factor. There is no evidence on the record that he is a flight risk or danger to the community. The Court finds that the Government's interest here is low. *See also E.A. T.- B., supra*.

Based on this review of the *Mathews* factors, the Court finds that Petitioner has a protected liberty interest in his continued release from custody, and that due process requires that Petitioner receive proper notice and an opportunity to respond before he can be re-detained.

Petitioner has been held in detention for over two months. Although there is no statutory time limit on detention pursuant to 8 U.S.C. § 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. The Supreme Court has further identified six months as a presumptively reasonable time to bring about a noncitizen's removal. *Id*. at 701. Once it is determined that there is no significant likelihood of removal in

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 5

the reasonably foreseeable future, noncitizens may be released on an Order of Supervision. 8 C.F.R. § 241.13(h).  This can be revoked on account of changed circumstances where there is a significant likelihood of the noncitizen's removal in the reasonably foreseeable future.  8 C.F.R. § 241.13(i)(2).

Respondents offer no evidence or argument that removal was or is "reasonably foreseeable."  Instead, Respondents argue that "ICE is continuing to pursue third country removal," that "DHS will continue to attempt to discuss third country options with Petitioner," and that his "request for injunctive relief concerning third country removal should be denied as overbroad."  Dkt. #16 at 6.  Respondents do not oppose immediate release and only take issue with the petition's request for injunctive relief concerning third country removal.  *Id*. Respondents contend that "[g]ranting this relief would impermissibly delay removal to any third country, even a third country that Petitioner has agreed to be removed to."  *Id*.  This strikes the Court as oblivious to Petitioner's situation.  Respondents do not, *e.g.*, acknowledge that a sudden deportation to a third country—without notice and an opportunity to respond—would separate Petitioner from his wife and eight children, who had meticulously planned to self-deport to Canada with the advice and consent of legal counsel, and, seemingly, Respondents.  There is nothing in the record to indicate that Petitioner will be agreeing to third country removal anytime soon.

The Court does not need to wait for a traverse from Petitioner arguing that Respondents essentially concede that Petitioner should be immediately released.  Respondents have had two months to obtain a travel document for Petitioner and have failed to do so.  The Court finds that most of Petitioner's requested relief is warranted under the particular facts of this case.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 6

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Petitioner's Amended Petition is GRANTED.  The Court ORDERS that Petitioner shall be released from custody immediately and may not be re-detained without adequate notice and a meaningful opportunity to respond.  Such notice must include the reasons for re-detention and, in this case, either evidence of a travel document from Cuba or the name of a third country willing to accept Petitioner.

DATED this 29th day of April, 2026.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 7